Clyde Ray JONES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–084 CR.

Court of Appeals of Texas, Beaumont.

Oct. 20, 1993.

Harold J. Laine, Jr., Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. DeWitt, Asst. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Capital Murder. Following their "guilty of Capital Murder" verdict, the jury assessed appellant's punishment at imprisonment for life. On appeal, appellant presents two points of error for our consideration, *viz* :

Point of Error One: The appellant's conviction and sentence must be reversed, because the trial court erred in admitting into evidence, over objection, a portion of an oral statement allegedly made by the appellant obtained in violation of Article 38.22(3)(c), Texas Code of Criminal Procedure, Article I, Section 10, Constitution of the State of Texas.

Point of Error Two: The trial court erred in not granting a mistrial due to the prosecution's comment on the appellant's failure to testify, in violation of Article 38.08, Texas Code of Criminal Procedure, Article I, Section 10, Texas Constitution, and the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

Appellant's first point of error has its genesis in a pretrial hearing in which appellant attempted to suppress his various oral renditions of events surrounding the robbery of a convenience store and fatal shooting of the store's clerk. The record before us reflects that shortly after the robbery and shooting occurred in the early morning hours of July 6, 1991, appellant and another man, Terry Wearren, were arrested. Detective Clifton Orr of the Beaumont Police Department was notified and initially drove to the scene of the robbery, a Circle A convenience store. Detective Orr observed the condition of the inside of the store to be "all torn up." Detective Orr testified that it appeared that "quite a struggle" took place inside the store as many items such as candy, chips and various display racks were knocked over and strewn about the floor. Outside, approximately sixty to seventy yards from the store, was the body of the clerk, Mohammed Iqbal.

Upon learning that suspects had been arrested, Detective Orr drove to the scene of the arrests. By the time he arrived, the suspects, appellant and Wearren, were already en route to the police station. Detective Orr inspected the vehicle that the suspects were operating when stopped and arrested. He noticed a cash drawer lying near the vehicle. Inside the vehicle, Detective Orr noticed a check dated July 6, and made out to "Circle A." He also observed a rifle inside the open trunk. The rifle was later identified as the weapon that killed Mr. Iqbal. Detective Orr then drove to the police station in order to speak to the suspects.

Following the standard "Miranda" [1] warnings, Detective Orr interviewed appellant. After initially denying involvement, appellant eventually admitted to having robbed and shot Mr. Iqbal. Because some of the details of the robbery and shooting were unclear, Detective Orr requested appellant to return to the store with Orr and describe the events that took place inside the store between appellant and the victim. Appellant agreed, and both he and Detective Orr returned to the Circle A store. Appellant then walked Detective Orr through the events involving Mr. Iqbal and appellant. Orr related that appellant admitted entering the store with

1. *See, Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the rifle and demanding money from Mr. Iqbal, who was behind the counter. Iqbal refused to hand over any money to appellant so appellant moved behind the counter to gain access to the cash register himself. Orr further testified to appellant's acknowledging having pointed the rifle at Iqbal when Iqbal suddenly grabbed the rifle and a struggle ensued. During the struggle behind the counter, the rifle discharged with a bullet lodging itself in a portion of the wall near the ceiling just behind a grey-colored piece of peg-board. At that point, as appellant described the events to Orr, a fight and struggle over the rifle took place beginning behind the counter and continuing into the store and then all the way out into the parking lot.

Significant to our analysis is the following testimony of Detective Orr taken from the pretrial hearing:

Q. (the State) I'm sorry. Let me back up. Let's just pick up from where we were. He told you about the gun being discharged. Could you show us using your diagram what supposedly happened after the gun was discharged?

A. (Orr) As they continued to fight and struggle over the gun both of them had their hands on the gun trying to gain control of it. They fought out from behind the counter all the way outside the store and even fought in the parking lot here (Indicates).

Q. Let me back up. Was there any other slug or hole in the wall consistent with anyone else in that particular area at an upward angle?

A. No, sir. I did not see any.

Q. That was the only one found in that area?

A. That's correct.

Q. Which would have been consistent with what he said?

A. That's correct.

Q. So he came around the corner and fought out in the park (sic) lot?

A. Right. They fought all the way out of the store. The store was pretty much much (sic) torn up. There were display racks and things tumped over all the way out of the store. It appeared to be like it was quite a struggle going out of that store.

■ On appeal, appellant complains that Detective Orr's testimony of appellant's "walk through" rendition of events occurring inside the store was inadmissible as it did not fall under the "unrecorded oral statement" exception of TEX.CODE CRIM.PROC.ANN. art. 38.22, sec. 3(c) (Vernon Supp.1993). Section 3(c) provides that an accused's unrecorded oral statement elicited while in custody is not admissible unless said statement "contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." Specifically, appellant argues that the sec. 3(c) "facts ... found to be true" exception requires, "... facts about which the police are unaware at the time of the confession [which] are later, after the confession, found to be true." *Romero v. State*, 800 S.W.2d 539 (Tex.Crim.App.1990). *See also, Port v. State*, 791 S.W.2d 103 (Tex. Crim.App.1990). Appellant contends that nothing elicited from appellant during the "walk through" rendition of events inside the store was unknown to the police at the time of said rendition. Furthermore, appellant points out that because a subsequent ballistics analysis of the bullet taken from the wall of the store could not determine if the bullet had been fired from the rifle used by appellant during commission of the robbery and killing of Iqbal, said facts contained in appellant's oral "walk through" of events were not "later found to be true." As we will point out, appellant's reliance on selective portions of·*Port* and *Romero* is misplaced.

The Court of Criminal Appeals recently reaffirmed the concept that if but one of the assertions within a confession, offered under the sec. 3(c) exception, is found to be true and conduces to show the guilt of the accused, then the confession is admissible in its entirety. *Gunter v. State*, 858 S.W.2d 430 (Tex.Crim.App.1993). *See also, Port v. State*, 791 S.W.2d at 107; *Marini v. State*, 593 S.W.2d 709, 713 (Tex.Crim.App.1980). In the instant case, physical evidence of the struggle over the rifle between appellant and

Iqbal, as asserted by appellant, was evident in Detective Orr's testimony of his personal observation of the total disarray of the inside of the store, and thus independently found to be true. The fact that appellant placed himself at the scene of the robbery, struggling with the victim over the murder weapon, conduces to show the guilt of appellant in light of the highly probative circumstantial evidence found at the scene of his arrest. Accordingly, the trial court committed no error in that appellant's oral "walk through" rendition of events occurring inside the store was admissible under the sec. 3(c) exception of art. 38.22. As to appellant's complaint of a violation of TEX. CONST. art. I, sec. 10, appellant provides neither argument nor authority in support of this complaint. As such, we decline to address this particular contention. *See, Heitman v. State,* 815 S.W.2d 681, 690–691, n. 23 (Tex.Crim.App.1991). Point of error one is overruled.

■ Appellant's second point of error avers error by the trial court in refusing to grant a mistrial following a sustained objection to an allegedly improper final argument at the guilt/innocence phase of the trial. We emphasize the following portion of the State's final argument of which appellant specifically complains:

> Consider and weigh the evidence carefully and remember them (sic). Remember the robbery. A man was shot in the back after quite a chase. No evidence of a gun. No evidence of self-defense. *No justification for deadly force by the defendant.* No requirement—(emphasis added)

As alluded to previously, appellant objected that the above sentence was a direct comment on his failure to testify. Said objection was sustained by the trial court with an instruction to the jury to disregard. Appellant's motion for a mistrial was denied.

As we have noted in previous opinions addressing this issue, reversible error will result from improper prosecutorial argument *only* if the argument is extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision, and is so inflammatory that its prejudicial effect cannot reasonably be cured by a judicial instruction to disregard. *Hernandez v. State,* 819 S.W.2d 806, 820 (Tex. Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). The argument must be examined in light of the entire record. The record in the instant case reflects that appellant's trial counsel, through skillful cross-examination, raised a self-defense issue on appellant's behalf. Counsel elicited testimony that the victim initiated the struggle over the rifle inside the store; that the struggle continued outside of the store with appellant attempting to break it off; that the victim suddenly produced a handgun and fired at appellant first; and that appellant shot back at the victim only once, without looking or aiming, and in self-defense. The State, on the other hand, elicited testimony that included the fact that the victim did not have access to a handgun at the store; that no handgun was found at the scene of the robbery or at the arrest scene; and that the victim's fatal wound entered the *back* of the victim's neck. In the context of the above testimony, we find that the comment by the prosecutor was not extreme or manifestly improper, and did not inject new and harmful facts into the case. Indeed, the comment appears to fall under the area of "summation of the evidence" in the *Alejandro* [2] list of permissible areas of jury argument. As such, the comment was certainly not so inflammatory that an instruction to disregard could not have cured any error with regard to the State's possible allusion to appellant's failure to testify. *See also, Griffin v. State,* 850 S.W.2d 246, 251 (Tex.App.— Houston [1st Dist.] 1993, pet. ref'd). There was no error in denying appellant's motion for a mistrial. We again decline to address appellant's complaints grounded in Texas and United States constitutional law as his brief under this point of error fails to provide argument and authority for the complaints. Appellant's brief further fails to attempt to "carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each ground." *Heitman, supra,* 815 S.W.2d at 690–691, n.

**2.** *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim. App.1973).

23. Point of error two is overruled, and the judgment and sentence are affirmed.

AFFIRMED.

BROOKSHIRE, Justice, concurring.

I readily concur with the Court's opinion relevant to the appellant's point of error number two. By this brief concurrence there is added an additional ground for overruling point of error number two. Concededly, a prosecutor violates our State and Federal Constitutions when that prosecutor comments on an accused's failure to testify. *See Garrett v. State*, 632 S.W.2d 350 (Tex. Crim.App.1982); TEX.CODE CRIM.PROC.ANN. art. 38.08. Query: But what constitutes a comment on the accused's failure to testify? An accepted standard is whether the prosecutor's remarks and arguments were manifestly intended or characterized in such a mode or manner that the jury would naturally and necessarily take the remarks and arguments as a comment on the accused's failure to testify. *Owen v. State*, 656 S.W.2d 458 (Tex.Crim.App.1983). In *Owen, supra*, the Court of Criminal Appeals wrote:

> The language of such a comment must be either manifestly intended, or of such a character *that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify*. (emphasis added)

My opinion is that the State's argument simply did not meet the test of what is a comment under *Owen v. State, supra*. The challenged remarks, in my view, are not manifestly intended to be a comment; nor were the challenged remarks naturally and necessarily to be taken by the jury as a comment on the accused's failure to testify. Of course, the language used must be more than an implication or an indirect allusion to the accused's silence. Thus, on this additional basis I concur.

Moreover, the prosecution asked the jury to remember the robbery; that a man was shot in the back after quite a chase; that there was no evidence of a gun. The remainder of the remarks were logical, reasonable deductions and a summation of that phase of the evidence. *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973).