COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JOSE ROGELIO VILLARREAL,                         )

                                                                              )              
No.  08-03-00221-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
384th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20020D03534)

                                                                              )

 

 

O
P I N I O N

 

Jose Rogelio
Villarreal appeals from a jury conviction for the offense of robbery in the
second degree.  The trial court assessed
a sentence of 10 years=
imprisonment which was suspended to 10 years=
community supervision.  Appellant was
also ordered to pay restitution fees of $2,025, and a fine of $1,500, probated
to $750.  On appeal, Appellant raises
three issues.  Appellant=s first two issues raise ineffective
assistance of counsel claims and his third issue raises a denial of due process
claim.  We affirm.

FACTUAL
BACKGROUND








Appellant was
charged by indictment of committing the offense of robbery alleged to have been
committed on or about December 11, 2000. 
The indictment read as follows:  AJOSE VILLARREAL . . . did then and
there while in the course of committing theft and with the intent to obtain and
maintain control of property, intentionally and knowingly threaten and place
REINA BANUELOS in fear of imminent bodily injury and death . . . .@ 
Appellant pled not guilty.  

During voir dire,
the State made the following remarks: 

In Texas a conviction can be supported
and sustained based solely on the testimony of a single witness just for the
very reasons that we=re
talking about.  It=s
not fair to say that somebody can=t
be prosecuted just because the only witness is the victim, all right?

 

But even given that
let=s assume that the State, in that
instance, brought only the victim in to testify, and lets further assume that
you do believe the victim, you know, there hasn=t
come up any reason why this person is lying, you=re
looking at this person=s
demeanor and you believe them, okay?

 

So let=s assume that you do believe this
witness because credibility is a separate question.  Let=s
assume you believe this witness, all right, can we all agree with that?  Who here still feels that they would not be
able to convict based solely on the testimony of a single witness, even if you
believe them? 

 

                                                             .                .               .

 

Let=s assume that the State brings to you
the victim of the robbery -- it=s
no longer you, let=s say you=re a juror now -- and the State brings
you that witness, that single victim to come in and tells you what happens,
meets all the elements that the State is required to prove and you believe
them, okay?  Assume with me that you
believe this witness, you don=t
see any reason for this person to lie, they sound credible to you, okay?  Now, even assuming that you believe the
witness, would you still require more than just that person=s testimony?  

 

Appellant=s
counsel did not object to any of these statements.  In response to this line of questioning,
several prospective jurors identified themselves as potentially having
difficulty in convicting a person based on only one witness=s testimony.  








On individual voir
dire, the State asked those individuals who identified themselves as not being
able to convict a person base on only one witness=s
testimony further questions.  First there
was Juror Knowles.  The following
exchange took place between Juror Knowles and the prosecutor and defense
counsel:

The
State:         Let=s
assume that the State presents to you a single witness, but let=s say that you believe the witness,
okay, beyond a reasonable doubt, okay? 
Would you be able to convict based on that testimony or do you still
require more?

 

Venireman
Knowles:     I=d
require more.

 

The
State:         Okay.  Anybody going to be able to talk you out of
that?

 

Venireman
Knowles:     No.

 

The
State:         That=s
fine.

 

Defense:           Can you follow the law if the Judge
instructs you that you must make a decision based on the evidence that=s been presented to you?

 

Venireman
Knowles:     Could I follow the law?  Sure.

 

Defense:           You would follow the Judge=s instructions?

 

Venireman
Knowles:     If it=s
the law, sure.

 

Defense:           Okay, thank you, sir.

 

The prosecutor stated that there
would be no instruction and moved to challenge Juror Knowles for cause.  The trial court granted the challenge and
Juror Knowles was excused.  Appellant=s counsel did not object to the
challenge or excusal.  








The next juror to
be challenged for cause was Juror Borgemenke. 
The State asked Juror Borgemenke if he believed a witness beyond a
reasonable doubt, could he convict the defendant.  Juror Borgemenke responded, AWell, I=m
in a gray area here because I think people can be credible and believable and
really do a good job on the stand but I still need other things to support
that.@  Appellant=s
counsel stated that Juror Borgemenke could not be rehabilitated.  The State challenged the juror and Appellant=s counsel made no objection.  

The next juror to
be taken on individual voir dire was Juror Cobos.  Juror Cobos responded the he would not be
able to convict even if he was presented with a credible witness that he
believe beyond a reasonable doubt.  The
trial court then thanked Juror Cobos and apparently excused him without
objection.

Next was Juror
Copado.  The following exchange took
place between the trial judge and Juror Copado:

The
Court:        You, as the juror, listen to
the testimony, you can believe the witness or disbelieve the witness, that=s your realm.

 

Venireman
Copado:      Okay.

 

The
Court:        That=s
your province.  If you don=t believe the witness well, then, that=s all the State has, well then their
case is gone, right?  But if you believe
the witness beyond a reasonable doubt, you believe that she is credible or he
is credible and they=re
believable, can you convict based on that one witness=s
testimony?

 

Venireman
Copado:      I don=t
-- 

 

The
Court:        Or do you need more?

 

Venireman
Copado:      I believe I need more.

 

The State then moved to strike
Juror Copado.  Appellant=s counsel did not object.  Juror Copado was excused by the trial
court.  








The last person to
be questioned on the issue of a one-witness prosecution and struck from the
jury was Juror Gaxiola.  The trial court
asked Juror Gaxiola that if he believed the witness=s
testimony beyond a reasonable doubt, could he make a finding of guilt.  Juror Gaxiola responded:

I think I need more
than that because I think I was led to believe that that was the only witness that
the district attorney had and that was going to be based on just one person=s testimony against another one and I
don=t believe that I should take one person=s word over another, okay, through
experience, because I=ve
been accused of doing something wrong and had to prove it really and you know I
don=t take a word for granted.  

 

The State then moved to challenge
Juror Gaxiola for cause.  Once again,
without an objection from Appellant=s
counsel, Juror Gaxiola was excused.  

During the trial,
the only eyewitness to testify was bank teller Reina Banuelos.  Ms. Banuelos testified that on December
11, 2000, she was working as a bank teller at Bank of the West.  She identified the Appellant as having been
in the bank on December 11, 2000.  She
testified that around 11 a.m., Appellant entered the bank wearing a green or
olive jacket and a baseball cap.  She
asked Appellant if she could help him and he gave her a note that said A[g]ive me all the money, I have a gun.@ 
She testified that he had his hand in his left pocket and was pointing
it at her.  Ms. Banuelos testified that
she was in fear of bodily injury and that she believed that he did have a
gun.  Appellant then pulled out a plastic
bag and held it out to her.  She opened
her money drawer and placed the money in Appellant=s
bag.  The police arrived shortly
thereafter and Ms. Banuelos provided them with a description of the
Appellant.  

The jury found the
Appellant guilty of robbery in the second degree.  After a sentencing hearing, the trial court
then sentenced Appellant to ten years=
confinement but suspended the sentence to ten years=
adult probation.  Appellant now timely
brings this appeal.








In Issue One,
Appellant argues that he was rendered ineffective counsel by his counsel=s failure to object to the State=s removal of the prospective jurors who
stated that they could not convict based solely on a one witness
prosecution.  In Issue Two, Appellant
argues that he was rendered ineffective assistance of counsel by his counsel=s failure to object to the
impermissible commitment questions asked to the potential jurors[1].  Appellant argues that because of this, he was
prejudiced because his jury was comprised of only jurors that agreed to convict
on a sole witness, as opposed to whether Appellant=s
guilt was proved beyond a reasonable doubt. 
We will address both Issue One and Issue Two together.

Ineffective
Assistance of Counsel








We review claims
of ineffective assistance of counsel under the two-prong test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.E.d.2d 674 (1984) and adopted by Texas in Hernandez v.
State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986).  To prevail, the defendant must show that
trial counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808, 812
(Tex.Crim.App. 1999); Strickland, 466 U.S. at 687-88, 104 S.Ct. at
2064.  The appellant must also show that
counsel=s
deficient performance prejudiced his defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson v.
State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the defendant to show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  It is defendant=s
burden to prove ineffective assistance of counsel by a preponderance of the
evidence.  Thompson, 9 S.W.3d at
813.

In reviewing a
claim of ineffective assistance of counsel, we must indulge a strong
presumption that counsel=s
conduct falls within the wide range of reasonable professional assistance and
the appellant must overcome the presumption that the challenged conduct might
be considered sound trial strategy.  Thompson,
9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this
presumption.  Thompson, 9 S.W.3d
at 813; see Jackson, 877 S.W.2d at 771. 
In the majority of instances, this task is extremely difficult because Athe record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel.@ 
Thompson, 9 S.W.3d at 813-14. 
When faced with a silent record as to counsel=s
strategy, this Court will not speculate as the reasons for counsel=s actions.  See Jackson, 877 S.W.2d at 771.  It is the defendant=s
burden to prove ineffective assistance of counsel by a preponderance of the
evidence.  Thompson, 9 S.W.3d at
813.

In this case,
Appellant did not file a motion for new trial to challenge the alleged
ineffectiveness of his counsel.  The
record before this Court does not contain trial counsel=s
explanations of the reasons for the inaction alleged as error, therefore it
will be difficult for Appellant to rebut the strong presumption that trial
counsel=s conduct
falls within the wide range of reasonable professional assistance.  See Thompson, 9 S.W.3d at 814.  

Our review of the
record in this case indicated that Appellant has not met his burden of showing
his counsel=s alleged
ineffectiveness.  As to Appellant=s Issue One, in Castillo v. State,
913 S.W.2d 529 (Tex.Crim.App. 1995), the Court of Criminal Appeals stated:








We now hold that a venireman who
categorically refuses to render a guilty verdict on the basis of only one
eyewitness is not challengeable for cause on that account so long as his
refusal is predicated on his reasonable understanding of what constitutes proof
beyond a reasonable doubt.

 

                                                              .               .               .

 

Like venireman Bradley
in Garrett, a venireman who categorically refuses to render a guilty
verdict on the basis of a single eyewitness may only be indicating that his
threshold for proof beyond a reasonable doubt is somewhat higher than the
minimum that the law recognizes as sufficient. 
Unless we are prepared to hold that jurors must always convict on the
basis of legally sufficient evidence, we cannot say that such a venireman has a
bias against the law

 

                                                             .                .               .

 

This is not to say
that a venireman who maintains he would never convict on the basis of one eyewitness
is never properly the subject of a State=s
challenge for cause.  It depends upon the
reason he says he would never convict.  A
venireman who says, for instance, that he could not convict even if he believed
the State=s only
eyewitness, and that testimony convinced him beyond a reasonable doubt of the
defendant=s guilt,
can be challenged for cause, Garrett notwithstanding.  Such a venireman really does hold the State
to a higher burden of proof than the law allows.

 

Castillo, 913 S.W.2d at 533.

In this case, the
challenged jurors all stated that they would be unable to convict based on a
one witness prosecution even if they believe the eyewitness beyond a reasonable
doubt.  As such, we find that Appellant=s counsel was not ineffective for
failure to object to the excusal of these potential jurors.  We overrule Issue One.








A commitment question
is a question that Acommit[s]
a prospective juror to resolve, or to refrain from resolving, an issue a
certain way after learning a particular fact.@  Standefer v. State, 59 S.W.3d 177, 179
(Tex.Crim.App. 2001).  Commitment
questions that attempt to bind prospective jurors to a position, using a
hypothetical or otherwise, are improper and serve no purpose other than to
commit the jury to a specific set of facts before the presentation of any
evidence at trial.  Atkins v. State,
951 S.W.2d 787, 789 (Tex.Crim.App. 1997). 
However, as acknowledged by the Texas Court of Criminal Appeals, the
rule prohibiting the use of commitment questions during voir dire is easily
stated but not necessarily easily applied. Standefer, 59 S.W.3d at
179.  To be proper, then, a commitment
question must contain only those facts necessary to test whether a prospective
juror is challengeable for cause.  Id.
at 182. The Court of Criminal Appeals explicitly set out the inquiry that we
use in analyzing commitment questions: 

So, the inquiry for
improper commitment questions has two steps: 
(1) Is the question a commitment question, and (2) Does the question
include facts‑‑and only those facts‑‑that lead to a valid
challenge for cause?  If the answer to
(1) is >yes= and the answer to (2) is >no,=
then the question is an improper commitment question, and the trial court
should not allow the question. 

 

Id. at 182‑83.  The questions asked of the potential jurors
whether they could convict in a case that had only one eyewitness.  We believe that the questions in this case
were proper.  The questions did not try
to commit the potential jurors to a particular verdict, but rather they
attempted to discover whether the potential jurors could follow the law.  As such, we find that Appellant=s counsel did not render him
ineffective assistance of counsel by failing to object to this line of
questioning.  We therefore overrule Issue
Two.

Destruction
of Evidence








In Issue Three,
Appellant contends that the State in bad faith destroyed potentially
exculpatory evidence and thus he was deprived of his right to due process of
law.  He argues that the destruction of
the photographs taken of him with the bank surveillance camera and the original
photos of himself, which included mug photos and driver=s
license photo were destroyed intentionally rather than accidentally.  Appellee contends that the destruction of the
photographs was a Aact of
pure negligence,@ that
they were inculpatory rather than exculpatory, and finally, that copies of the
destroyed photographs were available thereby making Appellant=s third issue a non-issue.

The loss or
destruction of exculpatory evidence can deny a criminal defendant due process
of law.  Lee v. State, 893 S.W.2d
80, 86 (Tex.App.--El Paso 1994, no pet.). 
The mere failure to preserve evidence is not a denial of due process,
unless the State destroyed the evidence in bad faith.  See Arizona v. Youngblood, 488 U.S.
51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); Lee, 893 S.W.2d at
86.  In order to show that denial of due
process occurred when evidence was lost, a defendant must show that the evidence
was (1) material, (2) favorable to the defense, and (3) destroyed in bad faith
by the State.  See Youngblood, 488
U.S. at 58, 109 S.Ct. at 337; California v. Trombetta, 467 U.S. 479,
485, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984).  This standard of constitutional materiality
is met only where the missing evidence possesses an exculpatory value that was
apparent before the evidence was destroyed, and is of such a nature that the
defendant would be unable to obtain comparable evidence by other reasonably
available means.  Trombetta, 467
U.S. at 489, 104 S.Ct. at 2534.  A
showing that the evidence might have been favorable does not meet the
materiality standard.  Lee, 893
S.W.2d at 87, citing McDonald v. State, 863 S.W.2d 541, 543 (Tex.App.‑‑Houston
[1st Dist.] 1993, no pet.); Hernandez v. State, 867 S.W.2d 900, 908
(Tex.App.‑‑Texarkana 1993, no pet.).  If evidence is destroyed in good faith and in
accord with the normal practice of the police, there is no due process
violation.  See Trombetta, 467
U.S. at 488, 104 S.Ct. at 2533.








In his brief,
Appellant states that he can prove bad faith on the part of the police in
destroying the photographs.  Appellant
proceeds with stating that Detective Pantoja, the lead detective in this
investigation, admitted that the destruction of the photographs was intentional
and that he had no acceptable reason for storing the evidence with the El Paso
Police Department property office.  Since
the district attorney initially declined to prosecute this case, and considering
that the case was going to be federally prosecuted, Appellant argues that the
evidence should have been stored with the Federal Bureau of Investigation for
safekeeping.  Furthermore, Appellant
argues that the photographs were potentially useful because they showed that
Appellant was not the person depicted in the copies of the photos introduced
into evidence at the trial.  The need for
the photographs was increased because of Ms. Banuelos conflicting physical
description of the robber and without the original photos, it was unlikely to
make an accurate assessment of a proper identification procedure of the
Appellant as the bank robber had been made.

We are not
convinced that the original photographs would have been exculpatory.  The photographs could have cut both
ways.  There is no evidence to indicate
that the photographs would have been favorable to the defense.  Even assuming the photographs were material
evidence, Appellant has not shown that the State destroyed the photographs in
bad faith.  

Appellant=s
naked assertion is insufficient to indicate whether the original photographs
would  have been exculpatory in light
that there were copies of the photos. 
The trial court had the opportunity to review the copies of the
photographs and to hear the testimony of Ms. Banuelos.   








In the case at
bar, we find no evidence that the police or the State acted in bad faith in
destroying the photographs.  The record
before us indicates that the photographs were destroyed by personnel at the
property office and as was testified by Detective Pantoja, without any
authorization.  There was no testimony by
the person or persons working at the property office and who destroyed the
photographs.  There is no indication that
it is not normal procedure to destroy evidence for cases that will not be pursued
by the district attorney=s
office.  There was no evidence put forth
that it is normal procedure to take evidence that could be potentially used for
a federal prosecution to the Federal Bureau of Investigation for safekeeping.  Appellant=s
attorney did not pursue this issue at trial and has shown no evidence
otherwise.  It appears to us that the
destruction of the photographs was unintentional and a result of
miscommunication.  Appellant has
presented no evidence that the State destroyed the photographs in bad
faith.  We overrule his third point of
error.

We affirm the
trial court=s
judgment.

 

 

 

August
12, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
The questions Appellant is alleging were commitment questions that are stated
above.