COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JOSE ROGELIO VILLARREAL,                      )
) No. 08-03-00221-CR
                                    Appellant,                        )
) Appeal from the
v.                                                                          )
) 384th District Court
THE STATE OF TEXAS,                                   )
) of El Paso County, Texas
                                    Appellee.                          )
) (TC# 20020D03534)
)


OPINION ON MOTION FOR REHEARING

            The opinion dated August 12, 2004 is hereby withdrawn and the following is substituted,
and we hereby deny Appellant’s motion for rehearing.
            Jose Rogelio Villarreal appeals from a jury conviction for the offense of robbery in the
second degree. The trial court assessed a sentence of 10 years’ imprisonment which was
suspended to 10 years’ community supervision. Appellant was also ordered to pay restitution
fees of $2,025, and a fine of $1,500, probated to $750. On appeal, Appellant raises three issues. 
Appellant’s first two issues raise ineffective assistance of counsel claims and his third issue
raises a denial of due process claim. We affirm.
FACTUAL BACKGROUND
            Appellant was charged by indictment of committing the offense of robbery alleged to
have been committed on or about December 11, 2000. The indictment read as follows: “JOSE
VILLARREAL . . . did then and there while in the course of committing theft and with the intent
to obtain and maintain control of property, intentionally and knowingly threaten and place
REINA BANUELOS in fear of imminent bodily injury and death . . . .” Appellant pled not
guilty. 
            During voir dire, the State made the following remarks: 
In Texas a conviction can be supported and sustained based solely on the
testimony of a single witness just for the very reasons that we’re talking about. 
It’s not fair to say that somebody can’t be prosecuted just because the only witness
is the victim, all right?
 
But even given that let’s assume that the State, in that instance, brought
only the victim in to testify, and lets further assume that you do believe the victim,
you know, there hasn’t come up any reason why this person is lying, you’re
looking at this person’s demeanor and you believe them, okay?
 
So let’s assume that you do believe this witness because credibility is a
separate question. Let’s assume you believe this witness, all right, can we all
agree with that? Who here still feels that they would not be able to convict based
solely on the testimony of a single witness, even if you believe them? 

. . .
 
Let’s assume that the State brings to you the victim of the robbery -- it’s
no longer you, let’s say you’re a juror now -- and the State brings you that witness,
that single victim to come in and tells you what happens, meets all the elements
that the State is required to prove and you believe them, okay? Assume with me
that you believe this witness, you don’t see any reason for this person to lie, they
sound credible to you, okay? Now, even assuming that you believe the witness,
would you still require more than just that person’s testimony? 

Appellant’s counsel did not object to any of these statements. In response to this line of
questioning, several prospective jurors identified themselves as potentially having difficulty in
convicting a person based on only one witness’s testimony. 
            On individual voir dire, the State asked those individuals who identified themselves as
not being able to convict a person base on only one witness’s testimony further questions. First
there was Juror Knowles. The following exchange took place between Juror Knowles and the
prosecutor and defense counsel:
The State:Let’s assume that the State presents to you a single witness,
but let’s say that you believe the witness, okay, beyond a
reasonable doubt, okay? Would you be able to convict
based on that testimony or do you still require more?
 
Venireman Knowles:I’d require more.
 
The State:Okay. Anybody going to be able to talk you out of that?
 
Venireman Knowles:No.
 
The State:That’s fine.
 
Defense:Can you follow the law if the Judge instructs you that you
must make a decision based on the evidence that’s been
presented to you?
 
Venireman Knowles:Could I follow the law? Sure.
 
Defense:You would follow the Judge’s instructions?
 
Venireman Knowles:If it’s the law, sure.
 
Defense:Okay, thank you, sir.

The prosecutor stated that there would be no instruction and moved to challenge Juror Knowles
for cause. The trial court granted the challenge and Juror Knowles was excused. Appellant’s
counsel did not object to the challenge or excusal. 
            The next juror to be challenged for cause was Juror Borgemenke. The State asked Juror
Borgemenke if he believed a witness beyond a reasonable doubt, could he convict the defendant. 
Juror Borgemenke responded, “Well, I’m in a gray area here because I think people can be
credible and believable and really do a good job on the stand but I still need other things to
support that.” Appellant’s counsel stated that Juror Borgemenke could not be rehabilitated. The
State challenged the juror and Appellant’s counsel made no objection. 
            The next juror to be taken on individual voir dire was Juror Cobos. Juror Cobos
responded the he would not be able to convict even if he was presented with a credible witness
that he believe beyond a reasonable doubt. The trial court then thanked Juror Cobos and
apparently excused him without objection.
            Next was Juror Copado. The following exchange took place between the trial judge and
Juror Copado:
The Court:You, as the juror, listen to the testimony, you can believe
the witness or disbelieve the witness, that’s your realm.
 
Venireman Copado:Okay.
 
The Court:That’s your province. If you don’t believe the witness well,
then, that’s all the State has, well then their case is gone,
right? But if you believe the witness beyond a reasonable
doubt, you believe that she is credible or he is credible and
they’re believable, can you convict based on that one
witness’s testimony?
 
Venireman Copado:I don’t -- 
 
The Court:Or do you need more?
 
Venireman Copado:I believe I need more.

The State then moved to strike Juror Copado. Appellant’s counsel did not object. Juror Copado
was excused by the trial court. 
            The last person to be questioned on the issue of a one-witness prosecution and struck
from the jury was Juror Gaxiola. The trial court asked Juror Gaxiola that if he believed the
witness’s testimony beyond a reasonable doubt, could he make a finding of guilt. Juror Gaxiola
responded:
I think I need more than that because I think I was led to believe that that
was the only witness that the district attorney had and that was going to be based
on just one person’s testimony against another one and I don’t believe that I
should take one person’s word over another, okay, through experience, because
I’ve been accused of doing something wrong and had to prove it really and you
know I don’t take a word for granted. 

The State then moved to challenge Juror Gaxiola for cause. Once again, without an objection
from Appellant’s counsel, Juror Gaxiola was excused. 
            During the trial, the only eyewitness to testify was bank teller Reina Banuelos. 
Ms. Banuelos testified that on December 11, 2000, she was working as a bank teller at Bank of
the West. She identified the Appellant as having been in the bank on December 11, 2000. She
testified that around 11 a.m., Appellant entered the bank wearing a green or olive jacket and a
baseball cap. She asked Appellant if she could help him and he gave her a note that said “[g]ive
me all the money, I have a gun.” She testified that he had his hand in his left pocket and was
pointing it at her. Ms. Banuelos testified that she was in fear of bodily injury and that she
believed that he did have a gun. Appellant then pulled out a plastic bag and held it out to her. 
She opened her money drawer and placed the money in Appellant’s bag. The police arrived
shortly thereafter and Ms. Banuelos provided them with a description of the Appellant. 
            The jury found the Appellant guilty of robbery in the second degree. After a sentencing
hearing, the trial court then sentenced Appellant to ten years’ confinement but suspended the
sentence to ten years’ adult probation. Appellant now timely brings this appeal.
            In Issue One, Appellant argues that he was rendered ineffective counsel by his counsel’s
failure to object to the State’s removal of the prospective jurors who stated that they could not
convict based solely on a one witness prosecution. In Issue Two, Appellant argues that he was
rendered ineffective assistance of counsel by his counsel’s failure to object to the impermissible
commitment questions asked to the potential jurors


. Appellant argues that because of this, he
was prejudiced because his jury was comprised of only jurors that agreed to convict on a sole
witness, as opposed to whether Appellant’s guilt was proved beyond a reasonable doubt. We
will address both Issue One and Issue Two together.
Ineffective Assistance of Counsel
            We review claims of ineffective assistance of counsel under the two-prong test set out by
the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.E.d.2d 674 (1984) and adopted by Texas in Hernandez v. State, 726 S.W.2d 53, 57
(Tex.Crim.App. 1986). To prevail, the defendant must show that trial counsel’s performance
was deficient, that is, counsel’s representation fell below an objective standard of reasonableness. 
Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999); Strickland, 466 U.S. at 687-88,
104 S.Ct. at 2064. The appellant must also show that counsel’s deficient performance prejudiced
his defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson v. State, 877 S.W.2d 768,
771 (Tex.Crim.App. 1994). This requires the defendant to show there is a reasonable probability
that, but for counsel’s unprofessional errors, the result of the proceeding would have been
different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771. A
reasonable probability is a probability sufficient to undermine confidence in the outcome.
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771. It is defendant’s
burden to prove ineffective assistance of counsel by a preponderance of the evidence. Thompson,
9 S.W.3d at 813.
            In reviewing a claim of ineffective assistance of counsel, we must indulge a strong
presumption that counsel’s conduct falls within the wide range of reasonable professional
assistance and the appellant must overcome the presumption that the challenged conduct might
be considered sound trial strategy. Thompson, 9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104
S.Ct. at 2065. Any allegation of ineffectiveness must be firmly founded and affirmatively
demonstrated in the record to overcome this presumption. Thompson, 9 S.W.3d at 813; see
Jackson, 877 S.W.2d at 771. In the majority of instances, this task is extremely difficult because
“the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of
trial counsel.” Thompson, 9 S.W.3d at 813-14. When faced with a silent record as to counsel’s
strategy, this Court will not speculate as the reasons for counsel’s actions. See Jackson, 877
S.W.2d at 771. It is the defendant’s burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Thompson, 9 S.W.3d at 813.
            In this case, Appellant did not file a motion for new trial to challenge the alleged
ineffectiveness of his counsel. The record before this Court does not contain trial counsel’s
explanations of the reasons for the inaction alleged as error, therefore it will be difficult for
Appellant to rebut the strong presumption that trial counsel’s conduct falls within the wide range
of reasonable professional assistance. See Thompson, 9 S.W.3d at 814. 
            After reviewing the record in this case, we find that Appellant has not met his burden of 
showing ineffective assistance of counsel. As to Appellant’s Issue One, in Castillo v. State, 913
S.W.2d 529 (Tex.Crim.App. 1995), the Court of Criminal Appeals stated:
We now hold that a venireman who categorically refuses to render a guilty verdict
on the basis of only one eyewitness is not challengeable for cause on that account
so long as his refusal is predicated on his reasonable understanding of what
constitutes proof beyond a reasonable doubt.

. . .
 
Like venireman Bradley in Garrett, a venireman who categorically refuses
to render a guilty verdict on the basis of a single eyewitness may only be
indicating that his threshold for proof beyond a reasonable doubt is somewhat
higher than the minimum that the law recognizes as sufficient. Unless we are
prepared to hold that jurors must always convict on the basis of legally sufficient
evidence, we cannot say that such a venireman has a bias against the law

. . .
 
This is not to say that a venireman who maintains he would never convict
on the basis of one eyewitness is never properly the subject of a State’s challenge
for cause. It depends upon the reason he says he would never convict. A
venireman who says, for instance, that he could not convict even if he believed the
State’s only eyewitness, and that testimony convinced him beyond a reasonable
doubt of the defendant’s guilt, can be challenged for cause, Garrett
notwithstanding. Such a venireman really does hold the State to a higher burden
of proof than the law allows.

Castillo, 913 S.W.2d at 533.
            In this case, Prospective Juror Knowles stated that if presented with only one witness,
which he believed beyond a reasonable doubt, he would not be able to convict based on such
testimony; he stated that he would require more. Prospective Juror Borgemenke stated that if he
believed the witness’s testimony beyond a reasonable doubt, he would still be in the gray area as
to whether he could convict based on such testimony; he stated that he would need “other things
to support that.” Prospective Juror Copado stated that if she believed the witness’s testimony
beyond a reasonable doubt, she would still need more to convict. Prospective Juror Gaxiola also
stated that after hearing the witness’s testimony beyond a reasonable doubt, that he would not be
able to convict, that he would need more. The jurors’ inability to convict under circumstances
where there is only one witness’s testimony appears to be based on their reasonable
understanding of what constitutes proof beyond a reasonable doubt. See Castillo, 913 S.W.2d at
533.
            In following Castillo, it appears that in this case, the jurors, in stating that they would not
be able to convict even after believing the witness’s testimony beyond a reasonable doubt, were
merely holding the State to a threshold for proof beyond a reasonable doubt higher that the
minimum recognized by law as sufficient. Id. The jurors may hold the State to the upper limit
for proof beyond a reasonable doubt. Id. According to Castillo, Appellant’s counsel should have
objected to the excusing of these potential jurors. Id. However, in the absence of a complete
record indicating what Appellant’s counsel strategy may have been, we will not speculate as to
what reasons existed for Appellant’s counsel’s actions. See Jackson, 877 S.W.2d at 771. 
Indulging in a strong presumption that Appellant’s counsel’s conduct fell within a wide range of
reasonable professional assistance, we find that Appellant has failed to meet its burden to prove
ineffective assistance of counsel. See Thompson, 9 S.W.3d at 813; Strickland, 466 U.S. at 689,
104 S.Ct. 2065.
            Even assuming that Appellant’s counsel’s action constituted error, Appellant fails to meet
the second prong of the test. Appellant has not shown that the failure to object raises a
reasonable probability that had his counsel objected, the outcome of his case would have been
different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2068; Jackson, 877 S.W.2d at 771. Issue
One is overruled.
            A commitment question is a question that “commit[s] a prospective juror to resolve, or to
refrain from resolving, an issue a certain way after learning a particular fact.” Standefer v. State,
59 S.W.3d 177, 179 (Tex.Crim.App. 2001). Commitment questions that attempt to bind
prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no
purpose other than to commit the jury to a specific set of facts before the presentation of any
evidence at trial. Atkins v. State, 951 S.W.2d 787, 789 (Tex.Crim.App. 1997). However, as
acknowledged by the Texas Court of Criminal Appeals, the rule prohibiting the use of
commitment questions during voir dire is easily stated but not necessarily easily applied.
Standefer, 59 S.W.3d at 179. To be proper, then, a commitment question must contain only
those facts necessary to test whether a prospective juror is challengeable for cause. Id. at 182.
The Court of Criminal Appeals explicitly set out the inquiry that we use in analyzing
commitment questions: 
So, the inquiry for improper commitment questions has two steps: (1) Is
the question a commitment question, and (2) Does the question include facts--and
only those facts--that lead to a valid challenge for cause? If the answer to (1) is
‘yes’ and the answer to (2) is ‘no,’ then the question is an improper commitment
question, and the trial court should not allow the question. 

Id. at 182-83. The questions asked of the potential jurors whether they could convict in a case
that had only one eyewitness. We believe that the questions in this case were proper. The
questions did not try to commit the potential jurors to a particular verdict, but rather they
attempted to discover whether the potential jurors could follow the law. As such, we find that
Appellant’s counsel did not render him ineffective assistance of counsel by failing to object to
this line of questioning. We therefore overrule Issue Two.
 
Destruction of Evidence
            In Issue Three, Appellant contends that the State in bad faith destroyed potentially
exculpatory evidence and thus he was deprived of his right to due process of law. He argues that
the destruction of the photographs taken of him with the bank surveillance camera and the
original photos of himself, which included mug photos and driver’s license photo were destroyed
intentionally rather than accidentally. Appellee contends that the destruction of the photographs
was a “act of pure negligence,” that they were inculpatory rather than exculpatory, and finally,
that copies of the destroyed photographs were available thereby making Appellant’s third issue a
non-issue.
            The loss or destruction of exculpatory evidence can deny a criminal defendant due
process of law. Lee v. State, 893 S.W.2d 80, 86 (Tex.App.--El Paso 1994, no pet.). The mere
failure to preserve evidence is not a denial of due process, unless the State destroyed the evidence
in bad faith. See Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281
(1988); Lee, 893 S.W.2d at 86. In order to show that denial of due process occurred when
evidence was lost, a defendant must show that the evidence was (1) material, (2) favorable to the
defense, and (3) destroyed in bad faith by the State. See Youngblood, 488 U.S. at 58, 109 S.Ct. at
337; California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). 
This standard of constitutional materiality is met only where the missing evidence possesses an
exculpatory value that was apparent before the evidence was destroyed, and is of such a nature
that the defendant would be unable to obtain comparable evidence by other reasonably available
means. Trombetta, 467 U.S. at 489, 104 S.Ct. at 2534. A showing that the evidence might have
been favorable does not meet the materiality standard. Lee, 893 S.W.2d at 87, citing McDonald
v. State, 863 S.W.2d 541, 543 (Tex.App.--Houston [1st Dist.] 1993, no pet.); Hernandez v. State,
867 S.W.2d 900, 908 (Tex.App.--Texarkana 1993, no pet.). If evidence is destroyed in good
faith and in accord with the normal practice of the police, there is no due process violation. See
Trombetta, 467 U.S. at 488, 104 S.Ct. at 2533.
            In his brief, Appellant states that he can prove bad faith on the part of the police in
destroying the photographs. Appellant proceeds with stating that Detective Pantoja, the lead
detective in this investigation, admitted that the destruction of the photographs was intentional
and that he had no acceptable reason for storing the evidence with the El Paso Police Department
property office. Since the district attorney initially declined to prosecute this case, and
considering that the case was going to be federally prosecuted, Appellant argues that the evidence
should have been stored with the Federal Bureau of Investigation for safekeeping. Furthermore,
Appellant argues that the photographs were potentially useful because they showed that
Appellant was not the person depicted in the copies of the photos introduced into evidence at the
trial. The need for the photographs was increased because of Ms. Banuelos conflicting physical
description of the robber and without the original photos, it was unlikely to make an accurate
assessment of a proper identification procedure of the Appellant as the bank robber had been
made.
            We are not convinced that the original photographs would have been exculpatory. The
photographs could have cut both ways. There is no evidence to indicate that the photographs
would have been favorable to the defense. Even assuming the photographs were material
evidence, Appellant has not shown that the State destroyed the photographs in bad faith. 
Appellant’s naked assertion is insufficient to indicate whether the original photographs would 
have been exculpatory in light that there were copies of the photos. The trial court had the
opportunity to review the copies of the photographs and to hear the testimony of Ms. Banuelos. 
            In the case at bar, we find no evidence that the police or the State acted in bad faith in
destroying the photographs. The record before us indicates that the photographs were destroyed
by personnel at the property office and as was testified by Detective Pantoja, without any
authorization. There was no testimony by the person or persons working at the property office
and who destroyed the photographs. There is no indication that it is not normal procedure to
destroy evidence for cases that will not be pursued by the district attorney’s office. There was no
evidence put forth that it is normal procedure to take evidence that could be potentially used for a
federal prosecution to the Federal Bureau of Investigation for safekeeping. Appellant’s attorney
did not pursue this issue at trial and has shown no evidence otherwise. It appears to us that the
destruction of the photographs was unintentional and a result of miscommunication. Appellant
has presented no evidence that the State destroyed the photographs in bad faith. We overrule his
third point of error.
            We affirm the trial court’s judgment.
 
January 19, 2005                                            DAVID WELLINGTON CHEW, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)